UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAMMIE WALKER,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)　　Case No. 1:08-cv-666
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　Honorable Paul L. Maloney
　　　　　　　　　　　　　　　　　)
COMMISSIONER OF　　　　　　　　)
SOCIAL SECURITY,　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　**REPORT AND RECOMMENDATION**
　　　　　　　Defendant.　　　　　)
_____)

　　　　　　This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits. On October 29, 2003, plaintiff filed her application for benefits, claiming a January 1, 2003 onset of disability.[1] Her claim was denied on initial review. (A.R. 41-50). On April 5, 2007, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 271-80). The ALJ adjourned the hearing for ninety days, providing plaintiff an opportunity to obtain and submit updated records in support of her claim. The hearing resumed on July 19, 2007, and plaintiff continued to be represented by counsel. (A.R. 281-329). On August 20, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 19-29). On May 20, 2008, the Appeals Council denied review (A.R. 4-7), and the ALJ's decision became the Commissioner's final decision.

---

[1] The earliest date a claimant for SSI benefits is eligible for benefits is the month after the application is filed. Thus, November 2003 is the ealiest date plaintiff could possibly be entitled to SSI benefits.

On July 14, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. Her brief contains the following statement of errors:

1. The attorney is obligated to arrange for and pay for the claimant's medical examinations in the furtherance of representation in a social security disability claim.

2. The administrative law judge precluded 2 witnesses from testifying.

3. IQ scores above 70 do not establish mental retardation.

4. The administrative law judge disregarded vocational expert testimony and did not give a reason.

5. The administrative law judge did not fully develop the record.

(Plf. Brief at 2, Statement of Errors, docket # 10). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 23). Plaintiff had the severe impairment of borderline intellectual functioning. (A.R. 23). She did not have an impairment or combination of impairments which met

or equaled the requirements of the listing of impairments. (A.R. 23). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but she was unable to maintain the attention and concentration necessary to perform detailed or complex tasks. (A.R. 24). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 25-28). Plaintiff did not have past relevant work. (A.R. 28). She was thirty-one years old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual. (A.R. 28). Plaintiff has a limited education and is able to communicate in English. (A.R. 28). The ALJ found that the transferability of job skills was not an issue because plaintiff did not have past relevant work. (A.R. 28). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 62,266 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 326-27). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 19-29).

**1.**

Plaintiff argues that the ALJ "disregarded" vocational expert testimony and did not give a reason. (Plf. Brief at 9). The ALJ was not bound by the VE's response to a hypothetical question which assumed that all plaintiff's subjective complaints were fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008). The ALJ found that plaintiff's subjective complaints

were not fully credible. (A.R. 25-28). He was not bound in any way by a VE's response to a hypothetical question incorporating a contrary assumption. I find no error.

**2.**

Plaintiff argues that she met or equaled the requirements of listing 12.05(C). (Plf. Brief at 7-8). I find that plaintiff's argument is frivolous.

It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

Listing 12.05(C) contains the following requirements:

12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \*

C. A valid verbal, performance, or full scale IQ of 60 to through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R. Pt. 220, App. 1. Listing 12.05(C) must be read as a whole and plaintiff had the burden of demonstrating that she met all parts of the listing. "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.

2001); *see* listing 12.00(A); *see also Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). The Sixth Circuit summarized the claimant's burden under listing 12.05(C) as follows:

> In essence, then, a claimant must make three showings to satisfy Listing 12.05(C): (1) [s]he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) [s]he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) [s]he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id. See also Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

*West v. Commissioner*, 240 F. App'x 692, 697-98 (6th Cir. 2007). The ALJ found that plaintiff did not have deficits in adaptive functioning, had IQ scores above 70, and did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function:

> The record clearly shows that the claimant is not dependent upon others for her personal needs, her IQ scores are above 70, and she does not have a physical or other mental impairment imposing additional and significant work-related limitations of function. The records also clearly show that the claimant does not have any restrictions in activities of daily living or difficulties maintaining social functioning, and has only moderate difficulties in concentration, persistence and pace. The claimant has never had an episode of decompensation.
>
> The undersigned finds that in this case, the totality of the evidence shows that the claimant does not have any deficits in her adaptive functioning. She is able to live independently and care for her own personal and physical needs; cares for three children; is able to read and write well enough to complete job applications and office forms; can do simple calculations and pay her bills on time; can understand and carry out simple instructions; and interacts appropriately with others.
>
> The undersigned concludes that the claimant's borderline intellectual functioning does not meet or medically equal 12.05.

(A.R. 24). Plaintiff ignores the ALJ's findings on all three elements and the substantial evidence supporting those findings.

The only element plaintiff even attempts to address is the IQ test score component. All plaintiff's test scores were above the level necessary to satisfy Part C of this listing. Her March

-6-

3, 2004 test yielded a verbal IQ score of 76, a performance IQ of 78, and a full scale IQ of 75. (A.R. 183). Plaintiff's reliance on an exhibit in which Psychologist Robert Griffith inaccurately summarized the March 2004 results (Plf. Brief at 8; reply Brief at 1, docket # 18, A.R. 216) is misplaced. It is patent that an erroneous summary cannot create a qualifying IQ score. March 23, 2007 testing produced a verbal IQ of 75, a performance IQ of 74, and a full scale IQ of 72. (A.R. 214). The ALJ's finding that plaintiff did not meet or equal the requirements of listing 12.05(C) is supported by more than substantial evidence.

Plaintiff's attorney, Barbara J. P. Ciuffa, argues that plaintiff should be given the benefit of a five point margin of error in IQ scores. (Plf. Brief at 7-8). The only legal authority she cites in support of this argument is a district court decision from the Middle District of Pennsylvania: *Gorecki v. Massanari*, 197 F. Supp. 2d 154 (M.D. Pa. 2001). (Plf. Brief at 7-8). Members of the bar of this court are expected to check whether the case law cited in their briefs remains good law. Any effort in this regard by Attorney Ciuffa would have revealed to her that the United States Court of Appeals for the Third Circuit had expressly abrogated the *Gorecki* decision. *See Burns v. Barnhart*, 312 F.3d 113, 125 (3d Cir. 2002). In *Burns*, the Third Circuit held that "it would violate the plain language the regulation" to read a five point margin of error into listing 12.05(C). The language of the regulation is "plain and unambiguous." 312 F.3d at 126. "The Commissioner, in promulgating the regulation, was aware of the standard margin of error and could have incorporated or referenced it if the stated numbers were to be given an expansive reading." *Id.* at 125. It cannot be assumed that a margin of error would have been in plaintiff's favor, and the actual IQ might be higher than plaintiff's score indicated. *Id.* at 125-26. Attorney Ciuffa further compounded her error by ignoring the applicable Sixth Circuit authority. The United States Court of Appeals for the Sixth

Circuit has expressly rejected her "margin of error" argument. *See Thurman v. Apfel*, No. 99-3587, 2000 WL 491673, at * 5 n.5 (6th Cir. Apr. 20, 2000) ("This approach would be inconsistent with the Listing and was rejected in *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991)). Plaintiff's counsel's failure to cite the above-referenced Sixth Circuit authority and her reliance on a long-abrogated district court case fall below the standard of practice expected by this court.

**3.**

Plaintiff's remaining arguments relate to the ALJ's conduct of the administrative hearing. Three claims are found in plaintiff's statement of errors: (A) the ALJ erroneously required plaintiff's attorney to personally pay for her client's medical examinations; (B) the ALJ precluded two witnesses from testifying; and (C) the ALJ did not fully and fairly develop the record. (Statement of Errors, Plaintiff's Brief 2). A fourth claim, that the ALJ was biased against plaintiff and her attorney, is found on the last page of plaintiff's brief in the conclusion. (*Id.* at 13). Upon review, I find that plaintiff's arguments are frivolous because they are devoid of factual and legal foundations.

    A.    <u>Requiring Plaintiff's Attorney to Pay for Plaintiff's Medical Examinations</u>

Attorney Ciuffa represents to the court that during an off-the-record conversation she had with the ALJ on April 5, 2007, the ALJ told her that she was obligated to arrange and pay for the claimant's medical testing and evaluations. (Plf. Brief at 4; Reply Brief at 3). She argues that it would have been unethical for her under Rules 1.17 and 1.8 of the Michigan Rules of Professional Conduct to personally pay for plaintiff's testing. (Plf. Brief at 3-4). There is no evidence supporting Attorney Ciuffa's argument.

The record shows that between the April 23, 2004 filing of plaintiff's request for a hearing (A.R. 51) and the start of her hearing on April 5, 2007 (A.R. 271), significant delays occurred which were attributable to plaintiff. On February 23, 2006, plaintiff indicated that she did not want to attend her hearing, but later agreed that she would appear. (A.R. 66). On May 11, 2006, plaintiff appointed Attorney Ciuffa as her representative. (A.R. 67). On June 23, 2006, the ALJ wrote a letter to Attorney Ciuffa directing her to file a brief and plaintiff's updated medical records on or before July 17, 2006:

> This letter is in reference to your above named client's Request for a Hearing currently pending in our office before me. After a review of the file, I am requesting that you submit the following information:
>
> 1. A brief supporting disability using the 5 step sequential evaluation process with specific reference to the medical exhibits in the file. Please make sure that any updated medical records that you submit are also addressed in your brief.
>
> 2. Updated medical records, as necessary (No Duplicate Medical Records). The last medical record is a consultative medical examination dated 3/16/2004. Claimant indicated that she is receiving counseling.
>
> 3. After careful review of your Fee Agreement, we cannot approve your agreement because it does not have the proper language. If you wish to submit a new fee agreement with the proper language for approval, please do so.
>
> Please submit the information requested above by **July 17, 2006.** If you cannot submit the information by [] **July 17, 2006**, please contact Amy Williams, my Senior Case Technician . . . as soon as possible. Once the information is provided to me, I will review the information and determine if a hearing is necessary.

(A.R. 181). Plaintiff's attorney did not respond to the ALJ's letter. On November 28, 2006, a notice of hearing was issued advising plaintiff and her attorney that the hearing was scheduled for January 30, 2007, in Grand Rapids, Michigan. (A.R. 72). On December 8, 2006, Attorney Ciuffa filed a

letter requesting that plaintiff's claim be reassigned to an ALJ who could conduct plaintiff's administrative hearing in Kalamazoo. (A.R. 80). On January 19, 2007, the acting chief judge of the hearing office denied this request. (A.R. 83). On January 22, 2007, plaintiff's attorney asked that the January 30, 2007 hearing be canceled, and it was. On February 23, 2007, a notice of hearing was issued advising plaintiff and her attorney that the hearing was scheduled for April 5, 2007. (A.R. 91-94).

Plaintiff's hearing began on April 5, 2007. The transcript shows that the ALJ was not satisfied with the state of the administrative record. He gave plaintiff's attorney an additional ninety days within which to obtain updated medical records and submit the brief he had requested almost a year earlier:

> ALJ: . . . We've had a protracted off-the-record conversation that related the following facts. The review of the medical information indicates there's ample medical evidence in the file. There is documentation of borderline intellectual functioning based on two individual psychiatric, or actually psychological evaluations, one conducted by the Social Security Administration, one conducted by the Kalamazoo County Mental and Substance Abuse Services. They both indicate IQ scores in the 70[s]. There is no other documentation of a medically determinable impairment in this matter. I have previously written to counsel, back in June of 2006, indicating the necessity for a brief and updated medical information and references to things in the file that I thought may require some development[.] I did not get a response to that mailing. We appear today and [we are] unable to proceed because we don't have the appropriate information on which to base a finding of disability. I've indicated to counsel that I'm disappointed in that result and the magnitude of the issues facing our office and Social Security in general in these matters not being able to provide the public service in a timely fashion and some of the reasons we have decided to continue this matter. I will continue this matter. How long do you think your gonna [sic] need?
>
> ATTY: How long will it take you to get the exam?
>
> WTN: I would say --

| | |
|---|---|
| ALJ: | That's yes? |
| WTN: | -- it could be three months. |
| ALJ: | Is that acceptable to you? |
| ATTY: | Yes, Your Honor. |
| ALJ: | I'm gonna [sic] post this for, and the, you know, can I count on you to do this or do I have to issue an order? |
| ATTY: | Yes, no, absolutely. |
| ALJ: | Okay. |
| ATTY: | Absolutely. |

(A.R. 274-75). The ALJ reiterated at the close of this hearing that he needed updated documentation regarding plaintiff's condition and the brief from plaintiff's attorney:

| | |
|---|---|
| ALJ: | . . . I will set that forward 90 days now. I believe, I expect you, counsel, to notify this office. You don't have to wait 90 days -- |
| ATTY: | Right. |
| ALJ: | -- you get it ahead of time and you're comfortable, I want that brief, I want you to give me that medical information, I [w]ant you to go through the five step evaluation and tell me why you believe it to be the way it is. I'm certainly not going to prejudge this case, but I think it poses a challenge to you, certainly going back to the onset here of guessing what the condition was and what's going on, and I'm gonna [sic] have to have Ms. Walker['s] assistance, what was going on, what was her functionality, I don't see any physical deficits -- |
| ATTY: | Uh-huh. |
| ALJ: | -- so I'm looking at the mental impairment alone -- |
| ATTY: | Correct. |
| ALJ: | -- and it has to be properly documented, so with that, if your in agreement with that, I'll post it 90 days and we'll count on your good judgment. Please |

> assist her to the extent you can Ms. Seacrest, and we'll have Tammie's case heard as quickly as we can.

ATTY: Thank you.

ALJ: We're not gonna [sic] put you back at the end of the line.

ATTY: Thank you.

(A.R. 278-79). The record is devoid of evidence supporting plaintiff's counsel's argument that the ALJ improperly demanded that she pay for plaintiff's medical examinations. Attorney Ciuffa had more than ample opportunity to object to the ALJ's on-the-record summary of their off-the-record conversation, if it were at all incomplete or inaccurate. Attorney Ciuffa did nothing at the April 5, 2007 hearing to preserve any objection. Attorney Ciuffa did not make any objection when the hearing reconvened. (A.R. 281). There is no evidence supporting counsel's argument. Even assuming *arguendo* that some factual support could be found, there is no coherent argument or citation to any legal authority establishing how a decision by counsel not to pay for additional testing on professional ethical grounds would provide a basis for overturning the Commissioner's decision.

### B. Preventing Witnesses from Testifying

Plaintiff's argument that the ALJ "excluded 2 crucial witnesses" (Plf. Brief at 2) is frivolous. Attorney Ciuffa argues that the ALJ "preclud[ed]" Ms. Verlisa Hinds and Ms. Nina Siagkris from testifying:

> The July 19, 2007 hearing transcript lists appearances by the Claimant, the Claimant's Attorney and the Vocational Expert. In his opening remarks, the ALJ says, "I didn't mean to neglect Verlisa Hinds, your friend joins you. She's here to provide moral support to you and to observe this proceeding . . . [.]" TR 284[.]
>
> In fact, Ms. Hinds was there to testify. She lives with Ms. Walker and assists her daily with shopping, managing money, going to school conferences, dealing with mail, and

> all the things Ms. Walker does not understand or has trouble managing. Ms. Hinds was there because Ms. Walker asked her to testify as to everything that she did for Ms. Walker due to Ms. Walker not being able to do those things for herself. ALJ Toal refused to allow her to testify and did not swear her in.
>
> ALJ Toal did not want Ms. Siagkris to testify either. In fact, he had her wait outside the hearing room. She is the Wraparound worker who deals with Ms. Walker and has direct substantive knowledge about her disabilities and impairments.

(Plf. Brief at 6). There is no evidence that the ALJ prevented any proffered witness from testifying. Attorney Ciuffa did not attempt to call Ms. Hinds or Ms. Siagkris as witnesses. One of an attorney's fundamental duties is to make and protect the record. Counsel did neither. A reviewing court cannot possibly be expected to grant relief on the basis of alleged evidentiary rulings that appear nowhere in the record. In the absence of any proffer of evidence on the record, this alleged error is unpreserved and unreviewable.

    C.    <u>Failure to Develop the Record</u>

Plaintiff's argument that the ALJ failed to adequately develop the record ignores controlling Sixth Circuit authority. Attorney Ciuffa had a more than an adequate opportunity to call and question witnesses at the July 19, 2007 hearing. It was plaintiff's burden to produce evidence in support of her disability claim, not the ALJ's burden. *See Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008) ("[T]he claimant bears the ultimate burden of proving disability."); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at * 2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment.").

The only authority Attorney Ciuffa cited in support of the argument that the ALJ failed to develop the record was a partial citation to a district court decision from the Eastern District

of Wisconsin. (Plf. Brief at 12) (citing *Elbert v. Barnhart*[,] 335 F. Supp. 2d 892 [(E.D. Wisc. 2004)]). It is well established law in the Sixth Circuit that the ALJ's special duty to *pro se* parties to develop the record does not extend to claimants represented by an attorney at the hearing. *See Wilson v. Commissioner*, 280 F. App'x at 459; *Trandafir v. Commissioner*, 58 F. App'x 113, 115 (6th Cir. 2003); *see also Kelley v. Commissioner*, 314 F. App'x 827, 831 n. 1 (6th Cir. 2009). Attorney Ciuffa's decision to ignore the well established standard within the Sixth Circuit was either negligent or deliberate, and in either case, it was again below the standard of practice expected of members of the bar of this court.

Plaintiff's related arguments that the ALJ failed to develop the record because he denied plaintiff's attorney's request for a supplemental hearing and "refused to hold the record open" to receive the results of examinations conducted after the July 19, 2007 hearing" (Plf. Brief at 11) are patently meritless. On July 25, 2007, six days after plaintiff's administrative hearing had concluded, Attorney Ciuffa faxed the following letter to the ALJ arguing that she was entitled to a supplemental hearing:

> Unless you issue a fully favorable decision, I am requesting a supplemental hearing to proffer additional evidence from Dr. Jewett after he receives the report from Ms. Walker's additional testing which has been scheduled for 7/27/07.
>
> These documents follow:
> 1. 11/16/06 Progress Note from KCMS Kalamazoo Family Medicine [A.R. 239-40];
> 2. 4/18/07 Annual Female Exam Note from KCMS Kalamazoo Family Medicine [A.R. 241];
> 3. 4/18/07 Consult/Referral Request Note from KCMS Kalamazoo Family Medicine [A.R. 242-43];
> 4. 5/16/07 Progress note from KCMS Kalamazoo Family Medicine [A.R. 244-45];
> 6. [sic] 7/17/07 letter from Dr. Dennis Jewett at Bronson Neurological Services to Dr. Ronald Seagle [A.R. 246-47];

|   | 7.  | 7/24/07 | note from Dr. Dennis Jewitt at Bronson Neurological Services [A.R. 248]; |
|---|---|---|---|
|   | 8.  | 7/25/07 | letter from Dr. Dennis Jewett at Bronson Neurological Services to me regarding Ms. Walker [A.R. 249]; [and] |
|   | 9.  | April 19, 2007 Order of Appeals Council [in a different case] requiring the Administrative Law Judge to offer the claimant an opportunity for a supplemental hearing when supplementary evidence received after the original hearing supports a fully favorable decision [A.R. 250]. | |

(A.R. 237). The ALJ considered all the medical evidence that plaintiff's attorney submitted after the hearing (A.R. 26-28), including plaintiff's July 17, 2007 statement advising Dr. Jewett that she was "smoking pot, usually on the weekend." (A.R. 246).

The ALJ's opinion explained why he was denying counsel's request for a supplemental hearing:

> After the hearing (July 25, 2007), the claimant's attorney faxed to the Grand Rapids [Office of Disability Adjudication and Review] ODAR the neurological report from the examination conducted July 17, 2007, along with six other medical records that the undersigned requested at the hearing. The claimant's attorney stated that unless the undersigned issued a fully favorable decision, she wanted a supplemental hearing to proffer additional evidence from Dr. Jewett (the neurologist) after he received the results from the claimant's additional testing that was scheduled for July 27, 2007. The claimant's attorney submitted a copy of an Appeals C[ouncil] remand from another claimant that indicated if the claimant requests a supplemental hearing the Administrative Law Judge must grant the request unless the Administrative Law Judge receives additional documentary evidence that supports a fully favorable decision.
>
> After fully researching the Social Security regulations, the undersigned finds that the regulations referred to in the Appeals Council remand were referring to proffer procedures, specifically what is required when the claimant or representative submit comments on the proffered material. When documents are proffered and the claimant requests a supplemental hearing, the Administrative Law Judge must grant the request unless a favorable decision can be issued. However, this regulation does not apply in this case since the claimant's attorney is not commenting on proffered documents; she is requesting a supplemental hearing in order to submit additional evidence.
>
> The request for hearing was [made] in April of 2004 and three hearings have been scheduled for this claim. The claimant, with her attorney, appeared at two of them. In order not to delay this case any longer, the undersigned denied the attorney's request for a supplemental hearing.

(A.R. 21).

Plaintiff cites no legal authority in support of her claim to entitlement to a supplemental hearing. (Plf. Brief at 11-12). If she was attempting to rely on the decision by the Appeals Council that she had faxed to the ALJ (A.R. 250), her reliance is misplaced. That order from the Appeals Council was based on the HALLEX[2] provision for "proffered" documents. The Sixth Circuit has expressly rejected the argument that this section of the HALLEX entitles the plaintiff to a supplemental hearing on evidence being offered by her own attorney:

> Appellant also relies on the Agency's Hallex § I-2-730 to argue that the ALJ unfairly denied her a supplemental hearing. However, Appellant has not established that she was ever entitled to such a hearing under the Agency's administrative rules. Under Hallex § I-2-701, "when an [ALJ] receives additional evidence after the hearing from a source other than the claimant or the claimant's representative, and proposes to admit the evidence into the record, the ALJ must proffer the evidence, i.e., give the claimant and representative the opportunity to examine the evidence and comment on, object to, or refute the evidence by submitting other evidence, requesting a supplemental hearing...." *Id.* (emphasis added). This is so because typically a non-claimant will introduce new evidence, and a supplemental hearing will be held to allow the claimant to examine or attack the evidence. Here, Appellant's attorney sought out Dr. Epstein's report and submitted it to the ALJ to support Appellant's case. Since Appellant, the claimant, offered this report, she is not entitled to a supplemental hearing under Hallex § I-2-730.

*Adams v. Massanari*, 55 F. App'x. 279, 286-87 (6th Cir. 2003). Again, plaintiff's position is contrary to Sixth Circuit authority. I find no error in the ALJ's decisions denying plaintiff's request for a supplemental hearing

---

[2]HALLEX is the acronym for the Hearings, Appeals and Litigation Law Manual of the Social Security Administration. "Through the HALLEX, the Associate Commissioner of Hearings and Appeals provides guiding principles, procedural guidance and information to adjudicatory and staff of the Office of Hearings and Appeals." *Bowie v. Commissioner*, 539 F.3d 395, 397 (6th Cir. 2008).

D. ALJ Bias

The "conclusion" section of plaintiff's brief states as follows:

In addition to his errors in advising the claimant's attorney to violate professional standards of ethics, precluding witnesses from testifying, improperly interpreting IQ scores, disregarding Vocational Expert testimony without explanation and failing to develop the record, Administrative Judge Toal treated the claimant with disrespect. A reading of the transcript, where the ALJ asks the Claimant a long convoluted question without allowing her to answer [sic] (start TR 301-end TR 314) [sic]. The brief to Appeals Council is replete with additional patronizing remarks [(TR 263 et seq.)].

The errors made by Administrative Law Judge Toal and bias to[wards] the claimant and her attorney mandate a reversal. Where the trier of fact improperly excludes written medical evidence and witnesses crucial to the claimant, no other resolution will afford Ms. Walker justice.

(Plf. Brief at 13). Plaintiff's brief cites no legal authority and contains no developed argument corresponding to the purported error of the ALJ's bias. Issues raised in a perfunctory manner are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Allen v. Highland Hosp. Corp.*, 545 F.3d 387, 406 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).

Assuming *arguendo* that the issue has not been waived, it is patently meritless. Indulgently construed, plaintiff is claiming a violation of her rights under the Due Process Clause because the ALJ was biased and her hearing was fundamentally unfair. *See Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Wells v. Apfel*, No. 99-5548, 2000 WL 1562845, at * 5 (6th Cir. Oct. 12, 2000). The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present."[3] *Collier v. Commissioner*, 108 F. App'x 358,

---

[3]Plaintiff did not allege that the ALJ was biased until after the ALJ denied her claim for benefits. She never utilized the procedure outlined in the regulations for disqualifying an ALJ whom

364-65 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982) and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Collier*, 108 F. App'x at 364. Here, a review of the hearing transcript and the ALJ's opinion make clear that the ALJ's actions fall far short of the extreme conduct necessary to sustain a claim of bias. *See Keith v. Barnhart*, 473 F.3d 782, 790 (7th Cir. 2007). The transcript shows that ALJ did not ask plaintiff "long convoluted" questions and he did allow the plaintiff an opportunity to answer the questions asked. Plaintiff's brief to the Appeals Council attempted to label various portions of the ALJ's questioning of this claimant who has borderline intellectual functioning as "patronizing." However, none of the purportedly "patronizing" questions by the ALJ were the subject of an objection by her attorney. There was nothing improper in the ALJ's questioning of plaintiff regarding her smoking marijuana "blunts," because SSI benefits cannot be awarded where drug or alcohol abuse is material to a finding of disability. 20 C.F.R. § 416.935. ALJ treated plaintiff and her attorney with respect. However, even if the ALJ had been discourteous or demeaning that would not provide a basis for overturning the ALJ's decision. *See Collier*, 108 F. App'x at 364 ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing."); *see also Moss v. Commissioner*, 39 F. App'x 989, 991 (6th Cir. 2002); *Wells v. Apfel*, 2000 WL 1562845, at \*5-6. Review of the entire record shows that ALJ was not biased against plaintiff or her attorney and that plaintiff was not deprived of a fundamentally fair hearing. I find no basis for disturbing the Commissioner's decision.

---

plaintiff believes to be biased. 20 C.F.R. § 416.1440.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   September 8, 2009          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).